Hello, Mr. Mandel. Good morning, Your Honor. Anytime you are ready, you may begin. Thank you very much, Mrs. Feehan, for the opportunity to speak with you today. Thank you very much. May it please the Court, Jeff Mandel, on behalf of Wisconsin Governor Tony Evers, this Court should vacate and remand for the District Court to consider sanctions under the proper standard. Notwithstanding several other issues raised by Mr. Feehan's counsel, there are really two straightforward legal issues here. The first is whether the District Court had jurisdiction over Governor Evers' sanctions motion. It is quite clear from really non-controversial, sustained decisions of the United States Supreme Court and every circuit court in the country to have considered this question that the answer is yes. The District Court rested on this Court's prior decision in overnight, but that decision does not divest a court of jurisdiction over a sanctions motion simply because an appellate mandate is issued. Properly read, the overnight Court holds that the District Court should not proceed with a sanctions motion that has been unreasonably denied, and yet the District Court here found that this case bears no resemblance to the fact of overnight at all, and specifically on pages 20 and 21 of the appendix explained why that's the case and there was not an unreasonable delay. Mr. Santoro, forgive me. Do you think there is a way to reconcile overnight with cases recognizing ancillary jurisdiction over collateral proceedings and the inherent authority of the court, or must it be overruled? What is your view? Judge Rovner, I don't believe that overnight needs to be overruled. I think that this Court has previously understood overnight correctly, not as a jurisdictional holding, but as sort of setting up an administrative rule that the Supreme Court has said lower courts may establish that where there is an unreasonable delay, the case won't go forward, and I would direct the Court to the 2014 decision in Lightspeed. There, not only did the Court allow a collateral sanctions motion to go forward under circumstances analogous to these, but there the defendants raised the exact jurisdictional argument that is raised here, and Judge Wood, in her opinion, said that argument goes too far. This is not jurisdictional. That argument fails, and here the sanctions motion was not unreasonably delayed, and therefore it should go forward. So I don't think this Court needs to overturn overnight. We did include in our brief an argument that if the Court, if this panel believes, as the district courts seem to, that overnight is truly a jurisdictional bar, then that should be overruled because it's incompatible with the United States Supreme Court precedent and the unanimous precedent of the other circuits, but I don't think this panel needs to go that far. The second issue here, once the Court decides that there is jurisdiction, is about whether the district court's approach in the alternative was unduly narrow. The district court said, well, even if I had jurisdiction, I probably wouldn't do much with this sanctions motion, and in saying that, the district court made a couple of errors. First, the district court erred in saying that as a categorical matter, a procedural infirmity that requires dismissal of a complaint cannot justify sanctions. That's just not true, and that does not accord with this Court's precedence. The plaintiff, the relief the plaintiff sought here was clearly barred by the 11th Amendment, among numerous other flaws, and that, bringing a complaint that is obviously barred by the 11th Amendment is just as sanctionable as bringing a complaint that fails on the merits. That was held by this Court in Hernandez at 197 F3rd 264. Now, if we find jurisdiction here on remand, doesn't the district court have to consider the timeliness of the motion, and couldn't the court deny sanctions on that basis alone? Well, Judge Rovner, I think not, because as I mentioned earlier, the district court already explained that there was no resemblance between the facts here and the facts at overnight. At page 20 of the appendix, the district court recognized that while the appeal at overnight lasted eight months, during which there was no effort to seek sanctions, here, the entire, only two months elapsed, start to finish. Additionally, on page 21 of the appendix, the district court noted that while the delay at overnight was unexplained and inexplicable, here, the events of litigation left Governor Evers with, quote, little time to file a sanctions motion before the mandate issued, end quote. The district court's finding on that should be conclusive on that issue, and I would also note that while counsel for Mr. Feehan has raised the jurisdictional argument and read overnight as a jurisdictional bar, which we believe is incorrect, counsel for Feehan has never raised, below or in this court, the idea that the motion was simply unreasonably delayed. And so, that really shouldn't be an issue below. Instead, the district court should be looking at whether sanctions are available, and this court has repeatedly held that a non-merits dismissal does not preclude sanctions for a case that is meritless. Mr. Mandel, can you direct us to any cases where sanctions were not sought until after judgment and either time to appeal or an appellate mandate had been issued or time to appeal had run? I believe we can, Your Honor. I mean, first of all, I would note that in the Cooter case, the United States Supreme Court said, quote, it is well established a federal court may consider collateral issues after the action is no longer pending. I'm asking you about the facts of cases. I understand, but even years after the entry of judgment. So, if the Supreme Court said that that was acceptable. I understand they said that. I'm asking you to give us some examples. Your Honor, the clearest example, I think, would be from the Sixth Circuit, the Henry Rubin case, I believe, where there was a very similar situation here. And the Sixth Circuit, there was a specific argument raised there that overnight foreclosed the sanctions motion, and the Sixth Circuit rejected that and said that that was not a correct reading of overnight. Okay. The reason I'm asking is I have a lot of concerns about the potential, in essence, for a post-victory ambush. And in most of the cases that you cited, sanctions were raised, sought, before a merits decision was rendered. And that's why I'm asking about this situation. Judge Hamilton, I think that's a reasonable concern, but I don't think it applies here for a couple of reasons. First, I will note that the Sixth Circuit, in the Red Carpet Studios decision, really delves into this question of timing of a sanctions motion and whether, for judicial economy purposes, it is better for the sanctions motion to come pre-judgment or post-judgment. And really explains that either way, you're going to have some judicial economy concerns, but that for a number of reasons, it's actually better, especially when you're talking about 1927 and inherent authority sanctions, right? Which are not like Rule 11 sanctions, where it's a complaint about a particular filing, but are broader complaints about the case as a whole, that it's really better for those to come after everything is concluded, and even after appeals, so that the court is not issuing sanctions when perhaps it got the merits wrong. But the other reason that I don't think that that concern applies here, Judge Hamilton, is because of the unique circumstances of this case. This case only lasted nine days. This case was then taken up on a premature appeal that was filed before the judgment was entered by the district court. There was no request to expedite the appeal in this court, and yet the very next day, there was already a mandamus petition to the United States Supreme Court. There was then another appeal to this court and another mandamus petition. This case was just a complete mess, and the entire thing ended within two months. So to say in this particular instance that waiting until all of those proceedings ended, which only took two months, was unreasonable or somehow is sandbagging, I think is simply not really accurate. The other error that the district court made and should be able to revisit on remand is that it said it couldn't assess fees under Section 1927 because it never had the opportunity to make a determination whether the claims were really frivolous or meritless. That's at page 25 of the appendix. That is simply inconsistent with this court's precedence. And for that reason, we would respectfully ask that the judgment be vacated and the case remanded to the district court for a proper hearing. Thank you. I will, although you used your time, I will give you two more minutes for rebuttal. And I would ask that Ms. Powell, instead of the 10 minutes, be given the same 12 minutes, please. Thank you, Your Honor. Hello. Yes. May it please the court, Sidney Powell for Mr. Feehan. This is not an attorney's fees case like White was under Section 1988. This is a sanctions matter which is punitive in nature and which the district court clearly did not have jurisdiction to entertain long after this court's mandate had issued. Every case, as Judge Hamilton noted, on which they rely from other circuits either had a pending Rule 11 motion in it or had a statutory entitlement to fees under 1988 or some other similar act, or the request for fees was made while the matter was in the district court, even if it was decided later. This case is different from all of those. The only two cases that this particular instance is on point with are overnight, which it fits clearly, and also Judge Ludwig's district court decision that led to Trump versus W, the Wisconsin Election Commission case. Both of those, Judge Pepper's analysis and Judge Ludwig's analysis, are spot on. This court, as it recognized even in the case that Mr. Evers cited in his FRAP 28J letter, notes it can't create jurisdiction. We can't have—to do what he asked would be tantamount to making a separate cause of action out of Section 1927 that would allow litigants to, as Judge Hamilton mentioned, ambush anyone however long they wanted after the case was closed. And that's not what the law is. There's simply no jurisdictional hook on which the district court could pin sanctions in this case. Can you draw—can you distinguish the—the thing that's interesting about the legal issues, just set aside the factual dispute that's giving—you know, that underlies this, is the—or the case, is it seems to me that you could say, no, there's jurisdiction because the jurisdictional conclusion aligns best with White, Cooter, Willey. Okay, but there cannot really be any meaningful period of delay. That it's going to be the extraordinary case where there is a motion like this filed to collect fees beyond, say, 20 or 30 days. That way. In other words, I—against the backdrop of the Supreme Court precedent, the harder conclusion that I have for your position is that there's no jurisdiction. But 1927 is different than Rule 11. Rule 11 motion, by nature of the rule itself, has to be filed while the case is pending in the district court. And so it's okay under Cooter and Willey if that's decided later or if the court didn't really have jurisdiction but thought it did. Rule 11, as Judge Easterbrook has discussed in several decisions, is more akin to the inherent authority of the court to punish for contempt. But it's very circumscribed by the language of the rule itself. He couldn't file a Rule 11 motion now. The court would not have jurisdiction to consider it. So would you just have us—on the jurisdictional question, would you ask us just draw—the mandate issuing is a very easy, bright line. Exactly. And mandate has a jurisdictional effect. You can't run the time after the Supreme Court's ruling unless the mandate had been stayed. And the mandate wasn't stayed. There are only a few jurisdictional triggers, if you will, in the appellate process. One is the timely filing of a notice of appeal, which is jurisdictional. And the best—the district court of jurisdiction invests it in this court, except for specific statutory or recognized exceptions. And then the last one is the issuance of mandate. Would we part ways with other circuits by so holding? No. They're all factually distinguishable, if not legally distinguishable. They all have— Ms.— No, I'm sorry. I interrupted. Please finish your thought. They all have an underpinning of Section 1988, abject entitlement to fees, or a pending Rule 11 motion. Not a single one of them exists on facts like we have before the court now. And there's no basis to make Section 1927 a standalone malicious prosecution statute or abusive prosecution statute, which is what they're essentially asking the court to do. Is it your position that a court's inherent authority to vindicate its authority and manage its proceedings is tied to the duration of a case, and that once a mandate issues, the court has no ability to address what it may believe to be bad faith conduct? I believe that's a correct statement of the law, Your Honor. It could have, if it had been sufficiently offended during the course of the proceedings of the case. It could certainly have complied with the procedures of Rule 11 to issue notice to counsel on its own initiative to address those concerns. But I don't know of a way that the court, once mandate issues, can sua sponte call it back for any sort of sanctions or punitive action. I mean, we have to remember that the law for construing inherent authority and sanctions, because they're punitive, has to be very strictly construed. And the jurisdiction for those matters has to be very strictly construed as well for the same reasons. You know, of course, the Supreme Court in Cooter and Gale versus Hartmarks held that it's well established that a federal court may consider collateral issues after an action is no longer pending. And it noted that even years after the entry of a judgment on the merits, a federal court could consider an award of counsel fees. So under your reading of overnight, how do you think it would be possible for a court to retain jurisdiction over the collateral issue of attorney's fees years after the entry of a judgment on the merits? Well, the reason I think it was Cooter and Gale was delayed almost four years after the entry of the judgment was because the district court was sitting on it. So that is completely distinguishable from this case. The court could always say, I'm reserving, I have this concern before it enters judgment or in conjunction with entering judgment, I have this concern and I want to address it after mandate issues. If the case comes back, if it's remanded to the district court for further proceedings and requests to enforce its own authority, it could do that. Again, it would have to follow the procedures of Rule 11 if Rule 11 applies. But of course, the court always has authority to enforce its own orders. And even Judge Pepper noted that she didn't reserve jurisdiction here. The case was gone. It was closed. It was long gone. And we were definitely blindsided by this motion for attorney's fees under 1927. And particularly so since Mr. Mandel also represented Governor Evers in the Wisconsin Election Commission versus Trump case, Judge Ludwig entered that opinion that he did. And they did not appeal that one. They filed the motion for fees under 1927 the very same day they filed it against us. And this has just been a series of a barrage, if you will, of grievances and sanctions motions that have been filed against good counsel. My colleagues and I have had outstanding reputations for our entire careers. But because we felt it was important to raise federal constitutional issues and unprecedented anomalies that arose in the 2020 election, we have simply been besieged by lawfare. Grievances in Michigan, Wisconsin, Arizona, where we aren't licensed to practice, two sanctions motions, one still pending in the Sixth Circuit. It's been incessant lawfare. Nineteen grievances were filed against me starting December 1st before the cases were even over with the Texas Bar by people with whom I have no connection and were going by press reports. And I had to answer those and litigate in front of the Texas Bar for over a year, producing 55,000 pages of documents, a privilege log of 590 pages. And definitely we had a reasonable basis to pursue the litigation we pursued. This appeal and this sanctions motion are what 1927 is designed to protect us against. It's the worst of lawfare. And so we would ask this court to consider all these facts in the law and affirm Judge Pepper's decision because, first of all, she's correct. She had no jurisdiction. There's absolutely no basis to hang jurisdiction on this motion. And secondly, she made very clear and repeatedly that if she did have jurisdiction, she would deny Section 1927 sanctions just as Judge Ludwig did in the Trump v. WEC. And the only question she had was whether a misquote was intentional. I can assure you and her that it was not. No lawyer I know would ever intentionally miscite a case to any federal court or state court for that matter. And I'd stick it— Oh, we see it a few times. I'm sure you do. My friend Judge Politz on the 11th Circuit, on the 5th Circuit, told a story about someone whose clerk came running back to him and said, Judge, Judge, Judge, you've got to see this. Look at this dot, dot, dot. It eliminated the word not. So, yes, I apologize. I know you see those things, but you would never see them from me or any counsel I know. It was an accident. I regret it. But, unfortunately, I make them. Does the pendency of your request for Supreme Court review figure into the timing arguments here? No, again, because there was no stay of the mandate. No one sought a stay of the mandate. If the court has no further questions, I will simply ask it to affirm the district court's decision, either summarily on the basis of her rulings or with clarification that attorney's fees under Section 1988 and statutes like that are not the same as sanctions and they have to be viewed differently and treated differently as well. The case law supports that. Thank you for the court's time. Thank you, Ms. Powell. Thank you. Mr. Mandel, two minutes. Thank you, Your Honor. Let me begin by returning to Judge Hamilton's question about cases that are factually similar. Let me provide four. Schlafer, Nance & Company v. The Warhol Estate, Second Circuit, 1999, sanctions motion under 1927, first filed after the appellate mandate. Court expressly repudiated the strong reading of overnight that is offered by Feehands' counsel here. Marianne Pensiero, Incorporated v. Lingle, Third Circuit, 1988, fully endorsing the Fourth Circuit's analysis in the Hicks case, which I'll talk about in a minute. The Hicks case expressly repudiated the strong reading of overnight that is raised here and also moved forward with a sanctions motion that was filed after the appeals. In Hicks v. Southern Maryland Health Systems Agency, Fourth Circuit, 1986, as I said, a motion that was filed after the appellate mandate, and the court expressly repudiated the broad reading of overnight and the Inree Rubin case from the Sixth Circuit in 1987 that I mentioned earlier. All of these cases are cited on page 16 of our opening brief. Let me also briefly address counsel's statement that there's something improper about the fact that Governor Evers did not appeal the denial of sanctions in the Trump v. Wisconsin Elections Commission case but did appeal here. Those cases are really different. Judge Ludwig reached the merits of the other case and found, while Governor Evers disagrees, that the claims presented there were colorable and that the court had jurisdiction, and this court affirmed his rules. We chose not to appeal the sanctions decision there based on that. This case is different in kind. This case was sanctionable from the get-go. There was never any jurisdiction. This case was frivolous. This case never should have been brought. And finally, with respect to this fear of sandbagging and things like that, this case is extraordinary because of the speed with which it moved through the court system, and it would simply be really unjust and nonsensical for the court to say that Governor Evers is foreclosed from seeking fees when he brought his motion quickly after the motions for the mandamus petitions were denied in the Supreme Court. Thank you very much. I want to thank both Mr. Mandel. We want to thank both Mr. Mandel and Ms. Powell. And of course, as always, the case will be taken under advisement.